**Electronically Filed
Intermediate Court of Appeals
CAAP-22-0000034
31-MAR-2023
08:25 AM
Dkt. 123 SO**

NOS. CAAP-22-0000034 AND CAAP-22-0000035

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**CAAP-22-0000034**
IN THE INTEREST OF JM
(FC-S NO. 17-00020)

AND

**CAAP-22-0000035**
IN THE INTEREST OF AM
(FC-S NO. 17-00023)

APPEAL FROM THE FAMILY COURT OF THE FIFTH CIRCUIT

SUMMARY DISPOSITION ORDER
(By: Wadsworth, Presiding Judge, McCullen and Chan, JJ.)

In these consolidated appeals, Respondent-Appellant

(**Mother**) appeals from two orders terminating parental rights

entered by the Family Court of the Fifth Circuit,[1] which together

terminated Mother's parental rights as to JM and AM (**Children**).[2]

---

[1] The Honorable Edmund D. Acoba presided.

[2] Mother is the natural and legal mother of Children. Children's father (**Father**) did not appeal the TPR Orders.

Specifically, Mother appeals from:  (1) the January 3, 2022 order terminating parental rights as to JM, entered in FC-S No. 17-00020, which created the appeal in CAAP-22-0000034; and (2) the January 3, 2022 order terminating parental rights as to AM, entered in FC-S No. 17-00023, which created the appeal in CAAP-22-0000035 (collectively, **TPR Orders**).  On January 3, 2022, the family court entered the same findings of fact and conclusions of law (**FOF/COL**) in each proceeding.

On appeal, Mother first challenges FOF 6 under the "Historical Background-Procedural History" section (**Historical**), FOF 22 under the "Concurrent Planning-Order to Show Cause Hearing" section (**Concurrent Planning**), and FOF 9, 20, and 21 of the "Termination of Parental Rights Hearing" section (**TPR**) of the FOF/COL.  (Formatting altered.)  Mother then contends that the family court abused its discretion by finding that Petitioner-Appellee Department of Human Services (**DHS**) made reasonable efforts to reunify Mother with Children, Mother was unable to provide Children with a safe family home with the assistance of a service plan, and the proposed permanent plan was in Children's best interests.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the issues raised and arguments advanced, we resolve Mother's points of error as discussed below, and affirm.

## I.    Background

On August 8 and September 29, 2017, DHS filed petitions for temporary foster custody of Children based on Mother's inability to provide Children with adequate food, clothing, supervision, psychological,[3] physical, or medical care. JM was two years old and AM was one month old when they entered foster custody on October 5, 2017.

To regain custody of Children, Mother agreed to complete substance abuse treatment, parenting education, and individual counseling.  Mother greatly progressed on the services, and DHS reunified Mother and Children under family supervision on December 24, 2018.

On August 8, 2019, DHS again removed Children from Mother due to unsanitary living conditions, lack of participation in services, failure to provide Children adequate food and water, concerns of drug use, incidents of domestic violence between Mother and her boyfriend (**Boyfriend**), including one in which Boyfriend struck JM, and failure to supervise Children, including an incident of Children wandering away from Mother's home without her knowledge.  DHS placed Children with paternal grandmother.  On August 21, 2019, the family court re-awarded foster custody of Children to DHS.

---

[3]  DHS' petition regarding AM notes "Mother has not provided her child with . . . psychological . . . care."  However, DHS' petition regarding JM does not note a failure to provide psychological care.

On February 6, 2020, DHS filed, among other things, an initial permanent plan (**Permanent Plan 1**), which contemplated termination of parental rights and permanent placement of Children with paternal grandmother. On March 6, 2020, the family court set the matters for a termination of parental rights hearing, but granted Mother multiple continuances.

During this time, DHS provided Mother with parenting education and individual counseling services. DHS also organized supervised visitation between Mother and Children, and filed periodic safe family home reports, which, among other things, documented an allegation of sexual abuse by Boyfriend against JM.

On July 15, 2021, DHS filed an updated permanent plan reflecting Children's removal from paternal grandmother's home, placement with resource caregivers (**RCGs**), and anticipated permanent placement of Children with RCGs (**Permanent Plan 2**). Additionally, DHS filed an updated service plan for Mother, which listed individual counseling as the sole remaining service for Mother to complete, but noted that Mother was discharged from counseling on June 3, 2021.

On July 15, August 26, October 7, and November 7, 2021, the family court held a single termination of parental rights trial for both proceedings. DHS case manager Lisa Cook (**Cook**) testified, in relevant part, that Mother completed services, however based on her observations, Mother remained

4

unable to redirect Children's behavior away from dangerous activities such as running away and hitting, and opined that Mother could not supervise and protect Children without the intervention of other parties.  Cook also testified that Mother had been in and out of services for about four years, but was unable to demonstrate that she could implement skills taught at services.

Mother's therapist, Orie Lutwin (**Lutwin**) testified in relevant part, that Mother completed counseling, reported no domestic violence by Boyfriend, and mentioned an allegation of sexual abuse by Boyfriend against JM, however they did not cover the topic of sexual abuse during therapy.  With respect to domestic violence, Lutwin testified that they covered the topic of "power and control dynamic in a relationship."

Parent educator Shenella Asuncion (**Asuncion**) testified in relevant part, that she taught Mother parenting classes, which Mother completed, and did one-on-one parenting support with Mother.  Asuncion also testified that Mother told her domestic violence was not an issue, and based on her interactions with Mother, Asuncion was under the impression that Mother was not in a romantic relationship.  Asuncion stated she did not address protecting Children from sexual abuse with Mother.

Mother testified in relevant part, that there was no domestic violence in her relationship with Boyfriend, she did not discuss domestic violence with Lutwin because she felt it was a "done issue," and she did not bring up domestic violence incidents with Asuncion. Mother did not testify regarding allegations of sexual abuse by Boyfriend against JM.

After considering the evidence and arguments presented, the family court terminated Mother's and Father's parental rights.

## II. Standards of Review

"Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." In re Doe, 95 Hawai‘i 183, 189, 20 P.3d 616, 622 (2001) (internal quotation marks omitted) (quoting In re Doe, 84 Hawai‘i 41, 46, 928 P.2d 883, 888 (1996)).

We review the family court's FOF for clear error. In re Doe, 95 Hawai‘i at 190, 20 P.3d at 623.

> A FOF "is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made." . . . "'Substantial evidence' is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion."

Id. (citations and ellipsis omitted).  Unchallenged findings of fact are binding on appeal.  In re Doe, 99 Hawaiʻi 522, 538, 57 P.3d 447, 463 (2002).

### III.  Discussion

**(1)**  In her first point of error, Mother claims that Historical FOF 6, Concurrent Planning FOF 22, and TPR FOF 9, 20, and 21 are clearly erroneous.  We address each in turn.

Mother argues that Historical FOF 6 is clearly erroneous because "[t]o the extent an issue exists as to whether Mother is able to adequately supervise her Children and protect them from dangerous situations, it exists because Mother was not afforded an opportunity by the DHS to resolve it."  Historical FOF 6 states:

> 6.  The Court finds that the issue is whether mother is able to adequately supervise her children and to recognize and protect them from dangerous situations, including future harm or threat of harm.

As a threshold matter, Mother's argument fails to demonstrate that Historical FOF 6 is clearly erroneous because she purports to explain the reason for the factual finding, rather than demonstrate it is in error.

In any event, Historical FOF 6 is supported by Historical FOF 7-9 and TPR FOF 13,[4] which corroborate DHS'

---

[4]  Historical FOF 7-9 state:

> 7.  The Court finds the GAL in her report filed July 14, 2021 noted concerns about mother's ability to supervise the children.

(continued . . .)

concerns about Mother's ability to supervise and protect Children. Additionally, the record reflects that DHS raised inadequate supervision and protection of Children as initial safety concerns, re-emergence of these safety concerns caused DHS to remove Children again on August 8, 2019, and these safety concerns remained unresolved throughout the remaining proceedings. Thus, substantial evidence supports Historical FOF 6, and we are not left with a definite and firm conviction that a mistake has been made.

Mother argues that Concurrent Planning FOF 22 is clearly erroneous because Mother made significant progress on her service plan prior to March 29, 2018. Concurrent Planning FOF 22 states:

> 22. At the review hearing on March 29, 2018, Parents had made little progress and the matter was scheduled for Order to Show Cause Hearing on June 7, 2018, to determine whether the matter should be set for termination of parental rights. (Order Continuing Foster Custody of [JM] filed on April 12, 2018).

---

(. . . continued)

> 8. The Court further finds that the DHS warned mother to not allow [Boyfriend] to have access to the children because of [JM]'s allegation [Boyfriend] sexually abused her.

> 9. The Court finds that despite DHS' warnings to mother, mother added [Boyfriend] to her residential lease as a co-tenant.

TPR FOF 13 states: "On August 26, 2021, Ms. Cook testified that she spoke to [Mother] about [Boyfriend] sexually abusing [JM], and the very next day, [Boyfriend] was added as a co-tenant to Mother's residential lease."

The record reflects that, on March 29, 2018, the family court recognized Mother made some progress on the service plan, but declined to find that she made sufficient progress on the service plan given Children's young age, and scheduled an order to show cause hearing.  Thus, the record contains substantial evidence to support the "little progress" finding in Concurrent Planning FOF 22, and we are not left with a definite and firm conviction that a mistake has been made.

Mother argues TPR FOF 9 is clearly erroneous because DHS did not provide Mother the opportunity to "show that she had achieved the ability to react quickly to the needs of her Children."  TPR FOF 9 states:

> 9.   Despite individual counseling being ordered in the Family Service Plan, [Mother] never achieved the ability to react quickly to the needs of her children, and therefore visits continue to be supervised four years later because Mother's ability to supervise the children is an ongoing safety issue.

Mother, however, fails to demonstrate that TPR FOF 9 is clearly erroneous.  At best, Mother purports to explain the reason for the factual finding, rather than demonstrate it is in error.  In any event, substantial evidence supports TPR FOF 9, and we are not left with a definite and firm conviction that a mistake has been made.  Therefore, TPR FOF 9 is not clearly erroneous.

Mother argues that TPR FOF 20 is clearly erroneous because some visitation observation notes show that Children listen to her directions.  Additionally, Mother argues that the

9

quoted language in TPR FOF 20 does not show that she is unable to manage Children.  TPR FOF 20 states:

> 20.  After three years of supervised visitation, parent education, hands on coaching during the visits, and individual counseling, the children continue to run away from Mother, and do not follow her instructions, "When [JM] was on the playground [JM] jumped from the top of the slide down to the ground while mom stood watching the girls play.  Then [JM] climbed once again to the top of the slide and the worker told [JM] to get down because it's dangerous.  [JM] listened to the worker."

Mother correctly asserts that some visitation notes reflect Children listening to Mother's instructions. Additionally, Mother correctly asserts that the quoted language in TPR FOF 20 does not support a finding that Children do not follow Mother's instructions.  This being said, the record confirms that Children running away from Mother remained a recurring safety issue.  Even if TPR FOF 20 is clearly erroneous in part, the error is harmless because it does not undermine the reason upon which the family court terminated Mother's parental rights, namely Mother's inability to adequately supervise and protect Children, which is supported by the record.  See discussion of Historical FOF 6 supra at 7-8.  As such, to the extent TPR FOF 20 is erroneous, it does not provide a ground to vacate the TPR Orders.  Hawaiʻi Family Court Rules (**HFCR**) Rule 61 ("No . . . error or defect in any . . . order or in anything done or omitted by the court . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment or order, unless

refusal to take such action appears to the court inconsistent with substantial justice").

Mother argues TPR FOF 21 is clearly erroneous because she completed individual counseling. TPR FOF 21 states:

> 21. Individual Counseling was ordered for Mother in the Order Continuing Foster Custody, dated July 15, 2021, it is the remaining and outstanding Service Plan item for Mother.

The record reflects that Lutwin discharged Mother from counseling on June 3, 2021. Additionally, Cook testified that Mother completed services. As such, the record lacks substantial evidence to support TPR FOF 21 and it is thus clearly erroneous. This error, however, is harmless because the family court recognized that Mother substantially complied with the service plan, but nonetheless concluded based on the court's findings that Mother was unable to provide Children with a safe family home. As such, TPR FOF 21 does not provide a ground to vacate the TPR Orders. HFCR Rule 61.

**(2)** In her second point of error, Mother claims the family court abused its discretion by finding that "DHS made reasonable efforts to finalize the initial permanency plan, which was reunification." Mother identifies the July 20, 2021 orders continuing DHS foster custody over Children (**Foster Custody Orders**) as the source of this point of error, and cites to HFCR Rule 46 as the basis for her ability to appeal the

Foster Custody Orders.[5]  Mother argues that, after DHS re-assumed foster custody of Children, DHS failed to offer her domestic violence and sexual abuse services, and failed to provide her opportunities to apply skills learned from services, therefore DHS failed to provide reasonable reunification efforts.

As an initial matter, HFCR Rule 46 is inapplicable because Mother had the opportunity to object to the family court's "reasonable efforts" findings at the July 15, 2021 hearing or by appealing from the Foster Custody Orders, but failed to do so.  In re Doe, 77 Hawaiʻi 109, 114-15, 883 P.2d 30, 35-36 (1994) (allowing immediate appeal of family court decisions that impact custody over a child); Rules Expediting Child Protective Appeals Rule 3 (setting forth a fifteen-day deadline to appeal appealable orders, or allowing appeal within thirty-days with a showing of good cause as per appellate rules).

In any event, the record in this case reflects that DHS provided Mother reasonable opportunities to reunify with

---

[5]  HFCR Rule 46 provides:

> Formal exceptions to rulings or orders of court are unnecessary; but for all purposes for which an exception has heretofore been necessary it is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action that the party desires the court to take or the party's objection to the action of the court and grounds therefor; and, **if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection does not thereafter prejudice the party**.

(Emphasis added.)

Children.  The record also indicates Mother was unable to demonstrate that she could apply what she learned from the services provided and declined to discuss domestic violence with Lutwin and Asuncion.  Based on this record, we cannot say that the Family Court abused its discretion.

**(3)**  In her third point of error, Mother claims the family court abused its discretion by finding that Mother was unable to provide Children a safe family home.  Mother identifies Historical FOF 1 and 2[6] and the TPR Orders as the basis for this point of error.  Mother argues Historical FOF 1 and 2 are clearly erroneous because DHS failed to provide her the opportunity to demonstrate her ability to provide a safe family home.

Mother purports to explain the reason for the factual findings, rather than demonstrate they are in error.  The record reflects that DHS provided Mother with reasonable opportunities

---

[6]  Historical FOF 1 and 2 state:

> 1. Having considered the testimony presented, the records and files herein, and the written closing arguments submitted by Mr. Goo, Mrs. Meyers, and Mr. Morimoto this Court finds by clear and convincing evidence that mother, . . . , and father, . . . , are not willing and able to provide a safe family home for their two children, . . . , even with the assistance of a service plan.
>
> 2. This Court further finds by clear and convincing evidence that it is not reasonably foreseeable that the parents will become willing and able to provide the children with a safe home, even with the assistance of a service plan within a reasonable period of time.

to reunify with Children. Therefore, we cannot say that the court abused its discretion in regards to this point.

(4) Finally, in her fourth point of error, Mother claims the family court abused its discretion by finding that Permanent Plan 2 was in Children's best interests. Mother argues that Permanent Plan 2 falsely states that DHS "continued to provide a service plan and referrals as needed[,]" and the safety issues DHS identified in 2017 remained unresolved. Additionally, Mother alleges DHS failed to consider placing Children with her parents.

Here, evidence of services, safety issues, and placement with maternal grandparents were before the family court. In 2017, JM was two years old and AM was one month old when they entered foster custody. Due to Mother's progression with services, DHS reunified Mother and Children under family supervision in 2018. But, in 2019, DHS removed Children because of unsanitary living conditions, failure to provide Children adequate food and water, failure to supervise Children (including an incident of Children wandering away from Mother's home without her knowledge), incidents of domestic violence between Mother and Boyfriend (including one in which Boyfriend struck JM), concerns of drug use, and lack of participation in services.

The January 9, 2020 safe family home report stated among other things:

> [Mother] is believed to be sober. She completed one urine test just after the children were removed in August. The UA was negative for all substances. The DHS concerns were that [Mother's] behaviors regarding the children may have been related to her having relapsed but it appears this is not the case. Her inability to follow through with scheduling medical appointments, cleaning the house to the point where it was at least sanitary, and her relationship with a violent partner were decisions she made while sober. The children were often unsupervised in the neighborhood while [Mother] was sober.

The report also noted Boyfriend transported Mother to and from supervised visits with Children and remained in his car during the visits, Mother's visits were often shorter than the time allowed, Mother was late for visits with Children, and JM reported being sexually abused by Boyfriend. DHS warned Mother not to allow Boyfriend to have access to JM due to allegations of sexual abuse, but Mother added Boyfriend to her residential lease as a co-tenant.

Moreover, when JM was residing with maternal grandparents pursuant to a safety plan, Mother violated the safety plan by resuming care of JM. And after AM was born, police officers "stated they did not feel the Maternal Grandparent's home would be a suitable environment for an infant[,]" as police "frequently responded to incidents at this home."

Based on the record in this case, we cannot say the family court was clearly erroneous in concluding that the "proposed permanent plan of termination of parental rights and

15

the goal for children [to be] placed for adoption is in the best interest of the children."

## IV. Conclusion

For the reasons discussed above, we affirm the family court's (1) January 3, 2022 order terminating parental rights as to JM, entered in FC-S No. 17-00020, and (2) January 3, 2022 order terminating parental rights as to AM, entered in FC-S No. 17-00023.

DATED: Honolulu, Hawaiʻi, March 31, 2023

On the briefs:

Casey M. Hutnick,
for Mother-Appellant.

Russell K. Goo,
Patrick A. Pascual,
Regina Anne M. Shimada, and
Julio C. Herrera,
Deputy Attorneys General,
for Petitioner-Appellee.

/s/ Clyde J. Wadsworth
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Derrick H.M. Chan
Associate Judge